# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

THOMAS E. MAXWELL,

     Plaintiff,

v.

                                                      No. 2:18-cv-00824-KWR-SMV

JOHN WHITLEY, Acting Secretary[1],
DEPARTMENT OF THE ARMY,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Acting Secretary of the Army John Whitley's Motion for Summary Judgment. **Doc. 80**.  Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken and therefore, is **GRANTED**.

## BACKGROUND

This is a discrimination and retaliation case. At the relevant times, Plaintiff Thomas E. Maxwell was an employee of the Department of the Army Research, Development and Engineering Command, Army Research Laboratory ("ARL"), at the U.S. Army White Sands Missile Range, in New Mexico.

Plaintiff filed this suit against Defendant alleging, in the Second Amended Complaint ("SAC") (**Doc. 42**), race discrimination and retaliation in violation of Title VII of the Civil Rights

---

1 Pursuant to Fed. R. Civ. P. 25(d) (automatic substitution of successor public official), former Secretary of the Army Mark T. Esper was substituted by John Whitley, Acting Secretary of the Department of the Army.

Act of 1964, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-632 ("ADEA"), when he was not selected for four separate promotions for four different supervisory positions between 2016 and 2018. The SAC alleges that Plaintiff was overlooked in favor of "Hispanic individuals" and "younger applicants over older applicants", and that Defendant "retaliated against employees for making complaints of unlawful discrimination." **Doc. 42, SAC, ¶ 2.** The SAC further alleges that Defendant removed Plaintiff from work on the Unmanned Aerial System in reprisal for his protected activity in filing a series of EEO complaints.[2]

The instant motion seeks summary judgment on Plaintiff's claims for race discrimination (Count I) age discrimination (Count II) and retaliation (Count III) specific to his claims for non-selection for the following four positions:

1) Acting Chief, Cybersecurity Branch - ARARL16JUL020802 (x2802) (July 2016) (race and retaliation),

2) Chief, Modeling/Simulation (M&S) Branch - ARARL17JUN02170 (x2170) (June 2017)(race and retaliation),

3) Electronic Warfare RF Analysis Technical Domain Leader (TDL) - ARARL17JUL03100 (x3100) (July 2017) (race, age, and retaliation), and

4) Technical Domain Lead (TDL) for Tools Techniques, and Methodologies (TTM) - ARARL18NOV04532 (x4532) (October 2018) (race, age, and retaliation).

### UNDISPUTED FACTS[3]

Plaintiff began working at the ARL at White Sands Missile Range ("White Sands") in New Mexico in 1985 while in school, and commenced full-time employment upon graduation in 1986. Plaintiff is currently employed at ARL as an Electronics Engineer for the ARL,

---

2 Defendant notes that "Plaintiff also references ARARL16FEB00982 ("x0982"), filed March 30, 2016, for non-selection for the position of Chief-Cyber Vulnerability Analysis Branch. EEO Complaint x0982 was withdrawn on July 6, 2016 and is not the subject of this lawsuit." **Doc. 80 at 2, fn.2.**
3 The Court includes the following undisputed facts and notes Plaintiff's objections where relevant.

Survivability/Lethality Analysis Directorate (SLAD).[4] His division has six branches, each with a Branch Chief. Plaintiff testified that, as of August 2020, to his knowledge, two of the three branch chiefs at White Sands are white, and his direct branch supervisor is Hispanic.[5] Plaintiff was over 40 years old at the time relevant to this action. As detailed in the following section, Plaintiff's SAC arises out of four separate non-selection decisions running from 2016 to 2018.

First Application: Acting Branch Chief, Cybersecurity – ARARL16JUL020802 (x2802)

In or around March 2016, Plaintiff applied for the position of Acting Branch Chief, Cybersecurity Branch. Richard Flores, Chief of the Information and Electronic Protection Division, was the selecting official. Flores identifies as "White, of Hispanic ethnicity." Patrick Baker, Director of Survivability Lethality Analysis was the final approving official.[6]

The Civil Personnel Advisory Center ("CPAC") at White Sands forwarded twelve applications meeting the minimum qualifications for consideration. Ten of the twelve applicants were Hispanic. As there were more than ten applicants, the applications were independently reviewed by a screening panel to determine the strongest candidates to interview.  The screening panel members were: (1) Jose Gonzalez, Chief Modeling Simulation Support Branch, (2) Daniel Landin, Branch Chief, Supervisory Electronic Engineer, and (3) Philip Simpson, Chief, Analytical

---

4 Plaintiff does not dispute this but notes that the name of the organization may have changed and that it is still "encompassed within the Army". **Doc. 83 at 2, Plaintiff's Response to Defendant's Statement of UMF's, ¶ 4.**

5 Although Plaintiff disputed Defendant's timeline with respect to when there were non-Hispanic officials at White Sands, his Response does acknowledge that, as of the time of his first non-selection, there were at least some non-Hispanic management officials at White Sands. *See* **Doc. 83 at 3, ¶ 5(a)** ("However, at the time of his first non-selection in 2016, [Plaintiff] stated that there were six Hispanic management officials and only two Non-Hispanic White management officials serving at White Sands Missile Range.").

6 Defendant notes that Dr. Baker is white. Plaintiff does not dispute this but claims this is irrelevant. Plaintiff further asserts that Dr. Baker, as the approving official, did not actual review the candidates' "package/resume" but would typically "review the memoranda prepared for signature along with some supporting information such as the scores," and relied upon the recommendation of the selecting official. **Doc. 83 at 4, ¶ 9 (a).** The Court has reviewed the relevant exhibit and notes that Dr. Baker states that in this particular instance he did "scan the resumes and then approved the selection." **Doc. 83-5, Ex. 5 at 1.**

Support Branch. The parties dispute the manner and intention by which Flores determined the criteria used by the screening panel, and by extension the way in which the screening panel rated the resumes. Defendant asserts the resumes were reviewed based on previously determined factors and criteria while Plaintiff alleges that the panel members "selectively" and inconsistently emphasized certain criteria and discounted other relevant experience with the intention of putting Plaintiff and the other non-Hispanic applicant at a disadvantage.[7]

Following independent review, the panel convened a three-person panel to review and rank the applicants' resumes. The total scores from the three panel members was averaged for each candidate and a break was determined between the top four candidates with a score of 14 or higher. Plaintiff was ranked eight out of the twelve and was not selected for interview. Plaintiff does not dispute that he was so ranked, but alleges that he was ranked lower than other, less qualified applicants based on discrimination, "arbitrary application of evaluation factors" and retaliation. *Id*. ¶¶ 18(a)-20(a). All interviewed candidates were asked the same questions. Of the interviewed candidates, one withdrew himself from consideration. The three remaining candidates were chosen to hold the position on a rotating basis of 90 days each.[8]

Second Application: Chief, Modeling/Simulation (M&S) – ARARL17JUN02170 (x2170)

Plaintiff next applied for the position of Chief, Modeling/Simulation Support Branch in

---

7 Plaintiff disputes the same for each non-selection process. In this instance, Plaintiff asserts that cybersecurity experience that Hispanic applicants had was overemphasized and that Plaintiff's other, relevant leadership experience was not properly accounted for by the panel. **Doc. 83 at 8, ¶ 16 (a).** Plaintiff also states that one of the selected Hispanic applicants, Chris Rodriguez, "did not have significant cybersecurity experience," and that otherwise Rodriguez had similar experience to Plaintiff's "except perhaps…less management experience than Plaintiff." ***Id.***
8 For each non-selection decision, Defendant asserts in its Undisputed Material Facts that "Plaintiff's race, age, and prior EEO activity were not considered during the selection process and were not a factor in the hiring decision." **Doc. 80 Defendant's Undisputed Material Facts, ¶¶ 24, 39, 52, 65.** Plaintiff disputes each of these facts. However, to the extent Plaintiff objects to these facts the Court finds that Plaintiff's objections are either conclusory or unsupported by the record.

2017. Flores and Baker were again the selecting and approving official respectively. Eight applicants were deemed qualified and forwarded for consideration, one of which removed himself from consideration prior to the start of interviews. The interview panel members were: (1) Richard Flores, (2) Cheri Hardin, Associate Director, Program Analyst, (3) Daniel Landin, Branch Chief, Supervisory Electronic Engineer, (4) Thomas Stadterman, Senior Campaign Scientist, General Engineer, and (5) Barbara Broome.[9]

Each applicant was asked the same twelve questions and each interviewer assigned a score based on their answer, after which the average scores were computed for each panel member to then generate a panel mean score for each applicant. Plaintiff was interviewed accordingly, ranked four of seven and was not selected for the position.[10] Of the top two candidates, one withdrew from consideration before a final decision was made, and the panel therefore awarded the position to the remaining highest ranked candidate, Chris Rodriguez.

Third Application: RF Analysis Technical Domain Lead – ARARL17JUL03100 (x3100)

Plaintiff applied for the position of RF Analysis Technical Domain Lead in 2017. Daniel Landin, Branch Chief, who is white, of Hispanic ethnicity, was the selecting official, and Baker was the approving official. Five applicants were deemed qualified and forwarded for consideration although one removed himself from consideration prior to the start of interviews, leaving four applicants, including Plaintiff. The interview panel members were: (1) Paige Mergler, Supervisory Operations Research Analyst, (2) Isabel Goode, Supervisory Electronics Engineer, (3) Daniel

---

9 Plaintiff does not dispute the composition of the panel but alleges that two of the four panel members were familiar with Plaintiff's EEO history.

10 Plaintiff disputes that "but for discrimination and retaliation, [Plaintiff] would have placed in the top two candidates; given that the top candidate dropped out, Plaintiff would have been the selected candidate." **Doc. 83 at 13-14, ¶ 34 (a).**

Landin, Branch Chief, Supervisory Electronic Engineer, and (4) Philip Simpson, Chief, Analytical Support Branch.[11]

Each applicant was asked the same twelve questions and each interviewer scored the applicant based on the answers. Average scores were computed for each applicant by each panel member and a panel mean score was calculated for each applicant. Plaintiff was ranked third out of four following the interviews.[12] Jorge Salinas, who is Hispanic, was selected for the position.

Fourth Application: Technical Domain Lead (TDL) for Tools, Techniques and Methodologies – ARARL18NOV04532 (x4532)

In July 2018 Plaintiff applied for the position of Technical Domain Lead for Tools, Techniques and Methodologies. CPAC forwarded six applications meeting the minimum qualifications for the position. Plaintiff was one of six individuals interviewed for this position, three of who were Hispanic and three of whom were not. The selecting official, Cedric Baca, is white, of Hispanic ethnicity. The interview panel members were: (1) Paige Mergler, Supervisory Operations Research Analyst, (2) Chris Rodriguez, Supervisory Electronics Engineer, (3) Daniel Landin, Branch Chief, Supervisory General Engineer, and (4) Cedric Baca, Supervisory General Engineer.[13]

Each applicant was asked the same eleven questions and each interviewer scored each applicant based on the answers. Average scores were computed for each applicant by each panel member and a panel mean score was calculated for each applicant. Plaintiff was ranked fourth out

---

11 Plaintiff does not dispute the composition of the panel but alleges that three of the four members were aware of Plaintiff's prior EEO activity.

12 Plaintiff again disputes his ranking on the basis that but for discrimination and retaliation "he would have been selected over the candidate actually selected." *Id.* at 19, ¶ 49 (a)-(viii).

13 Plaintiff does not dispute the composition of the panel but alleges that three of four members were aware of Plaintiffs prior EEO activity. **Doc. 83 at 24, ¶ 58 (a).**

of six after the interviews and was not selected for the position.[14] The selected candidate, Jorge Salas, was Hispanic, under the age of 40, and received the overall highest mean score. The selecting official, Baca, was not aware of Plaintiff's prior EEO history.

Plaintiff sued the Army, through Secretary Mark T Esper,[15] for retaliation and age discrimination based on the fact that he was not selected for the promotions. Defendant then filed the instant Motion for Summary Judgment.

<u>Plaintiff's Additional Undisputed Material Facts</u>

Plaintiff asserted additional facts in his response. Defendant addressed them to the extent that it states that Plaintiff's additional facts are "merely a recitation of his own accusations and allegations, unsupported by admissible evidence, and are insufficient to create a genuine issue of material fact." **Doc. 90 at 5**. Nevertheless, Defendant argues, even if true, Plaintiff's facts are immaterial to the determination of whether he was not selected based on his race or age or in retaliation for his protected EEO activity. *Id*. The Court includes the following additional undisputed facts but finds that they are largely irrelevant to its decision:[16]

1.   Plaintiff has experience in leadership positions, including serving as a system leader on multiple technical programs and receiving the Superior Civilian Service Award.

2.   Plaintiff participated in a one-year developmental assignment as the Technical Assistant to the Division Chief, Richard Flores, was the Assistant, Division Chief, Survivability/Lethality Analysis Directorate, Information and Electronic Protection

---

14 Plaintiff disputes that but for discrimination and retaliation he would have been selected over the candidate chosen by the panel. ***Id*. at 24, ¶ 60 (a)-(c).**

15 The caption has since been updated to reflect the successor public official, John Whitley, as acting secretary, Department of the Army.

16 The Court further notes that some of the exhibits in the record cited to by Plaintiff in support of these facts are not clearly titled, making it somewhat unclear as to what context they are being drawn from exactly. The first two facts appear to be based on Plaintiff's own assertions or responses to questions posed by someone else in relation to one of the jobs he applied for. For example, Plaintiff's second undisputed material fact cites to Doc. 83, Exhibit 2 in the record. That exhibit does not have a title page and appears to be taken from a series of questions and answers. At the top of the document the words "Thomas Maxwell, Agency Docket ARARL16JUL02802" are displayed, without further explanation.

Division (developmental assignment) for a total of four years; participated in a supervisory training course; and participated in the White Sands Missile Range Executive Development Program.

3.   As of the date of Plaintiff's earliest applicable EEO complaint in this case (-2802), one of the panel members, Philip Simpson, may have had some knowledge of Plaintiff's prior EEO activity.[17]

## STANDARD OF REVIEW

A motion for summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp*., 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*. The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). A court cannot weigh the evidence and determine the truth of the matter.   Rather, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)). A mere scintilla of evidence in the nonmovant's favor is not

---

17 Plaintiff cites to Doc. 83, Exhibit 9 for this assertion, but does not quote the section in its entirety. The exhibit appears to be a series of questions and answers posed to Mr. Simpson relating to Plaintiff's application. The complete portion cited to by Plaintiff provides:

   Q: The Complainant contends he was not selected for the position because of his prior protected EEO activity. What is your response to his assertion?
   R: I have no knowledge if he filed an actually [sic] EEO complaint. I think he complained about a previous panel selection, but I do not know the details. In screening panel discussions, no mention was made of any prior protected EEO activity.

sufficient. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## DISCUSSION

The parties are in agreement that the Court should analyze Plaintiff's discrimination and retaliation claims under Title VII, § 1981 and ADEA under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[18]  Under this framework, Plaintiff must first establish a prima facie case.  If Plaintiff does so, this "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)). The burden of production then shifts to Defendant to show that "it had a legitimate, nondiscriminatory reason for the adverse action." *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes this showing, Plaintiff then bears "the full burden of persuasion to show that the defendant discriminated on the illegal basis" of race or age. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124–25 (10th Cir. 2005); *Nunez v. Lifetime Prod., Inc.*, 2018 WL 921537, at *1–2 (10th Cir. 2018). "The plaintiff may do so by showing that the proffered reason is pretextual." *Bryant v. Farmers Ins. Exch.*, 432 F.3d at 1124–25.

A plaintiff may establish pretext by pointing out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Lobato v. New*

---

18 In his Response Brief, Plaintiff states that he "generally agrees that the burden-shifting analysis in McDonnell Douglas Corp. v. Green applies governs [sic] the Court's analysis of this case," but argues that the facts gathered in discovery provide direct evidence of discrimination and meets the *McDonnell* standard. *See* Doc. 83 at 30.

*Mexico Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013). The Tenth Circuit has opined that an employee generally may establish pretext in one of three ways. An employee may present evidence that: "(1) the employer's stated reasons for an adverse employment action are false; (2) the employer acted contrary to a written company policy prescribing the employer's action against the employee under the circumstances; or (3) he was treated differently from other similarly situated employees who violated protocols of comparable seriousness." *Fulkerson v. Colvin*, 2018 WL 1726245, at *4 (D.N.M. Apr. 6, 2018) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004)).

## I.   Title VII Race Discrimination

To establish a prima facie claim of disparate treatment based on race in a failure to promote context, the plaintiff must show: (i) the plaintiff is a member of a protected class; (ii) the plaintiff was qualified and applied for the position; (iii) despite the plaintiff's qualifications, [he] was not promoted to the position; and (iv) the promotional opportunity was filled or remained open. *See Serrano v. Veneman*, 410 F. Supp. 2d 1049, 1058 (D.N.M. 2005) (citing *Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1306–07 (10th Cir.2005)). "[T]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.' " *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1227 (10th Cir.2000)(quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

The Tenth Circuit has opined that the *McDonnel Douglas* formulation should be modified in cases, such as the one before this Court, of "reverse discrimination." *Notari v. Denver Water Dept.*, 971 F.2d 585, 588-89 (10th Cir. 1992) ("…[I]t is appropriate to adjust[ ] the prima facie

case to reflect the reverse discrimination context of a lawsuit because the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group.") (internal quotations omitted). In *Notari*, the Tenth Circuit explained its position:

> We find the reasoning that supports the decisions to modify the *McDonnell Douglas* formulation for reverse discrimination cases persuasive. As the Supreme Court has indicated, "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). We explained in *Livingston* that it is appropriate to "adjust[ ] the prima facie case to reflect" the reverse discrimination context of a lawsuit because "the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group." *Livingston,* 802 F.2d at 1252. The *McDonnell Douglas* presumption—that is, the presumption that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision—is valid for a reverse discrimination claimant only when the requisite background circumstances exist. Thus, we agree that a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.

*Id.* at 589.

Citing to his responses to and disputes of Defendant's Undisputed Material Facts, Plaintiff argues that he has presented sufficient evidence to establish a prima facie case of discrimination and retaliation "regardless of whether [it] is best characterized as "direct" or 'circumstantial'...."[19] **Doc. 83 at 32.** He insists that the "facts" he presents clearly indicate that "but for the fact that he is White and/or over 40 years of age, he would have been selected for the positions to which he

---

19 Direct evidence is evidence which, if believed, proves the existence of a fact in issue without inference or presumption. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

applied." *Id*. at 30. The Court disagrees.

It is undisputed that Plaintiff was deemed qualified and applied for the positions, that, despite his qualifications, he was not promoted to the positions and, the promotional opportunities were filled by other applicants. However, Plaintiff's claims fail in that he has not adequately evidenced that Defendant is an unusual employer that discriminates against Caucasians in favor of Hispanic employees and has not shown "a reasonable inference that but for the plaintiff's status the challenged decision would not have occurred." *Notari v. Denver Water Dept.*, 971 F.2d at 590. Plaintiff asserts in conclusory fashion that "to the extent necessary," he has shown sufficient facts to demonstrate that Defendant was an "unusual employer" **Doc. 83 at 34.**

Although Plaintiff repeatedly asserts that Hispanic candidates were "groomed" for management positions to his detriment, the only authority he cites for this accusation is an Affidavit from another non-selected white employee, Mr. Debroux, a non-party to this action. Defendant contest the admissibility of Debroux's Affidavit as inadmissible hearsay. **Doc. 90 at 11.** Regardless, Defendant correctly notes that the Affidavit's conclusory determination that Hispanic applicants are "groomed" for managerial positions has no foundation and is based on Debroux's personal perception of the racial makeup of White Sands. Relying solely on Debroux's Affidavit, Plaintiff recites the numerical composition of the workforce as "90% Hispanic" and asserts without any other basis that non-Hispanic employees are placed in "lower visibility" jobs and that Hispanic employees' achievements are lauded more greatly than others. **Doc. 83 at 21.** The lack of foundation for any of these allegations is fatal to Plaintiff's argument. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in

evidence; conclusory and self-serving affidavits are not sufficient."). Moreover, Plaintiff has not met his burden to demonstrate that Defendant's legitimate, nondiscriminatory reasons for his non-selections were pretextual.

Defendant Provides Legitimate, Nondiscriminatory Reasons for Plaintiff's Non-Selection

Even assuming, *arguendo*, that Plaintiff had established a prima facie case of discrimination, Defendant has set forth legitimate, nondiscriminatory reasons for its non-selection decisions. Once a plaintiff makes out a *prima facie* case of discrimination, the employer must articulate a legitimate, non-discriminatory reason for its decision—in this case, the four non-selection decisions. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008); *MacKenzie v. Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005). "[This] does not require the defendant to explain any differences in treatment between the plaintiff and others. In other words, step two is not a comparative step." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting *EEOC v. Flasher Co.,* 986 F.2d 1312, 1318 (10th Cir.1992)).

Ultimately, the burden shifts back to the plaintiff to prove that the employer's stated reason was a pretext for discrimination. *Id.*  A plaintiff may demonstrate pretext "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  The Court will address Defendant's articulated reasons for its decisions as well as Plaintiff's arguments regarding pretext for the non-selection decisions.

Acting Branch Chief, Cybersecurity – ARARL16JUL020802 (x2802) Non-Selection Decision

With respect to this Plaintiff's non-selection decision, Defendant has put forward a legitimate, nondiscriminatory reason for the decision not to interview Plaintiff for this position. Flores, Chief of the Cybersecurity and Electromagnetic Protection Division at the time of Plaintiff's claim, testified that he was the selecting official, with Baker as the final approving official.[20] **Doc. 80-1, Ex. 1, ¶¶ 3-4.** Flores attests that when there are more than ten resumes for consideration for a position, a screening panel typically conducts an initial evaluation prior to selecting interviewees, and therefore, a three-member screening panel was convened consisting of Landin, Simpson, and Gonzalez. *Id.* **at ¶ 6(b).** He provides that the screening members used a series of determining factors and criteria in evaluation the resumes, generating an average score for each candidate. *Id.* Ultimately, the panel found a natural break between the top four candidates, scoring above a 14, and the others. **Doc. 80-1, Ex. 1-A, ¶ 1.** Plaintiff received a score of 12.3, placing him eighth out of twelve. *Id.*, Ex. 1, ¶ 6(c); **Ex. 1-C.**

According to the Selection Memorandum attached to Defendant's Motion, a three-member panel, including Flores, was convened to interview the four candidates. Patricia Niedecker attended as the EEO representative. All candidates were asked the same questions and provided the opportunity to relay additional information they deemed necessary. Responses were scored on a scale from 0-3.[21] The memorandum details the computation of average scores, noting that there

---

20 The Court notes that, while not dispositive, in *Kendrick v. Penske Transp. Services, Inc.* (1999 WL 450886, at *8 (D. Kan. Apr. 13, 1999), aff'd, *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000)), the District Court noted that "…plaintiff may have difficulty establishing discrimination where the alleged discriminatory decision-maker is in the same protected class as plaintiff." Here, it is undisputed that Dr. Baker, the selecting official for this position, is also White.

21 Pursuant to the Selection Memorandum attached to Defendant's Motion (Doc. 80-1, Ex. 1-A) the 0-3 scoring equated to (0=Did Not Respond to Question; 1=Marginal Response; 2=Satisfactory Response; 3=Exceptional Response).

was no discernable difference between the remaining candidates.[22] Noting that "Giving employees an opportunity to experience the supervisory role and responsibility was also a primary motivation for management advertising the position…" the panel determined that the remaining candidates would all serve in the position in 90-day rotations. **Doc. 80-1, Ex.1-A, ¶¶ 4-5.**

These proffered reasons more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions.  *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218.

Chief, Modeling/Simulation (M&S) – ARARL17JUN02170 (x2170) Non-Selection Decision

Defendant has also put forward a legitimate, non-discriminatory reason for the decision to select a different candidate for this position. In his Affidavit, Flores attests that he again served as the selecting official, with Baker as the approving official. He testifies that "ARL's Merit Promotion Plan establishes the policies and procedures for promotions and other competitive placements for all civilian employees covered by the Science and Technology Reinvention Laboratory Demonstration (Demo) Project at the U.S. Army Research Laboratory (ARL)," and that the selection process complied with those policies. **Doc. 80-1, Ex. 1, ¶ 13.**[23]

Flores testifies that the selection committee was composed of a diverse, five-member panel, which interviewed all applicants, including Plaintiff. Panel members scored the applicants on a scale of 0-5, computing an average score by panel member, which was then used to create a panel

---

22 One candidate removed himself from consideration, leaving three applicants.

23 Plaintiff disputes Defendant's statement that each selection process complied with applicable policies and procedures. However, the Court concludes that Plaintiff's assertions are insufficient to raise an issue of material fact. Moreover, to the extent that Plaintiff cites to the record, specifically the affidavit of Army witness Belinda McKinley relating to governing policy for the selection process, for his assertion that the Army did not have a "policy" and "gave and gave significant de facto control over the interview process to the selecting official" (**Doc. 83 at 4, ¶ 10(a)**), the Court notes that this is inaccurate. McKinley testifies generally that "Army's policy on issuing the referral is that the HR specialist rates the application and we issue a referral list to management"; the process is typically handled internally by the relevant organization and the Army is not involved in that process; and, when question whether selecting officials have "a lot of discretion" as to how they structure interview process, stated that she could not say what internal processes were and that counsel would need to "go back to the organization for that."

mean score for each applicant. The highest rated candidate, Chris Rodriguez, achieved a panel mean score of 3.7, which the Selection Memorandum notes was closely aligned with the next best candidate at 3.6. **Doc. 80-1, Ex. 1-E, ¶ 4.** Plaintiff scored a 3.2, placing him fourth. Three applicants scored lower than Plaintiff. *Id*. The Memorandum identifies why the panel was impressed with the two highest ranked candidates:

> Both Mr. Rodriguez and Mr. Bangalan impressed the panel with their response that highlighted their dedication to mission and people. Panel consensus was that Mr. Rodriguez and Mr. Bangalan were the two strongest applicants in this group.[24]

*Id*.

Because Mr. Bangalan accepted a position elsewhere, the panel selected Mr. Rodriguez, noting that he "has the full constellation of SKA's required to be an effective supervisor," and that the panel was "impressed with his strong people skills, focus on mentoring, strong understanding of the position and its responsibilities, deep technical management and his emphasis on teaming and its importance to the organization." *Id*. at 5.

The Court finds that the panel's process was rational, transparent, and straightforward. Plaintiff was not rated last, and the candidates were all asked the same questions and afforded the same opportunity to  provide additional information they felt relevant to the application.

RF Analysis Technical Domain Lead – ARARL17JUL03100 (x3100) Non-Selection Decision.

Defendant has put forward a legitimate, non-discriminatory reason for the decision to hire Jorge Salinas for the position. Plaintiff was ranked third out of four following the interviews.[25] Mr.

---

24 The Memorandum notes that since Mr. Bangalan was interviewed by phone and was not from ARL, the panel recommended he be invited to visit the facility at White Sands prior to making a final decision. However, Mr. Bangalan later notified the panel that he had accepted a different position.

25 Plaintiff again disputes his ranking on the basis that but for discrimination and retaliation "he would have been selected over the candidate actually selected." ***Id*. at 19, ¶ 49 (a)-(viii).**

Landin, the selecting official, attested that Salinas received a significantly higher mean score than the other applicants, and that "The panel unanimously agreed that Mr. Salinas was the most qualified for the position, and that he demonstrated the technical acumen, leadership experience/abilities, communication skills and passion for the mission and people." **Doc. 80-2, Ex. 2, ¶ 7(f).** Landin further detailed the selection process, noting that an EEO representative, Ms. Patricia Proctor, participated in the process. *Id*. ¶ 7(a). Panel members took turns asking the applicants the same questions, and each panel members scored individual applicant's replies on a scale of 0-5[26], after which panel mean scores were computed for each applicant. *Id*., ¶ 7 (d).

According to the Selection Memorandum attached to Defendant's Motion, Salinas' panel average scores were 4.67, 4.67, 4.75 and 4.54, with a mean score of 4.66. Plaintiff's scores were 2.04, 2.46, 2.29 and 2.50, resulting in a mean score of 2.32. Another candidate, identified as Williams, also scored higher than Plaintiff, with scores of 3.00, 3.50, 2.58 and 2.38, with a mean score of 2.86. *See* **Doc. 80-2, Ex 2-A, Figs. 1-2**. The final candidate, identified as Debroux, scored 1.79, 1.63, 2.21 and 1.63, with a mean score of 1.81.  Landin additionally attests that panel members reviewed the applicants' resume and application packets to ensure the content was consistent with their interview scores. Doc. 80-2, Ex 2-A, ¶ 7 (e). The Selection Memorandum provides the following analysis:

> The panel consensus was that Mr. William and Mr. Salinas resumes aligned more strongly to the position description and the technical specialized experience associate with the job announcement and position for which the candidates were being interviewed. Mr. Salinas impressed the panel members with his responses which highlighted his technical acumen, understanding of the position, experience, leadership, and qualifications. The panel unanimously agreed that Mr. Salinas was the strongest applicant for the EW Technical Domain Lead position.

---

26 Pursuant to the Selection Memorandum attached to Defendant's Motion (Doc. 80-2, Ex. 2-A) the 0-5 scoring equated to (0=No Response; 1=Poor Response; 2=Marginal Response; 3=Satisfactory Response; 4=Good Response; 5=Thorough Response).

*Id.*, ¶ 4.

These proffered reasons more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions.  *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218.

Technical Domain Lead (TDL) for Tools, Techniques and Methodologies ARARL18NOV04532 (x4532) Non-Selection Decision

For similar reasons Plaintiff's argument fails with respect to Plaintiff's non-selection for the position of Technical Domain Lead (TDL) for Tools, Techniques and Methodologies. The Court finds that Defendant also put forward a legitimate, non-discriminatory reason for the decision to hire Jorge Salas for the position.

Cedric Baca, a Division Chief at the time of Plaintiff's non-selection, was the selecting official. Baca attested that Salas received an overall higher score than the other applicants, and that "The panel unanimously agreed that Mr. Salas was the most qualified for the position, and that he distinguished himself in his ability to think and communicate at a strategic level both technically and organizationally.." **Doc. 80-3, Ex. 3, ¶ 6(e).** Baca details the selection process, noting the participation of an EEO representative, Dion Butler. *Id.* ¶ 6(a). Panel members took turns asking the applicants the same questions, and scored individual applicant's replies on a scale of 0-5[27], after which panel mean scores were computed for each applicant. *Id.*, ¶ 7 (d).

According to the Selection Memorandum attached to Defendant's Motion, Salas' panel average scores were 2.86, 2.68, 3.36 and 3.68, with a mean score of 3.15. Plaintiff's scores were 2.68, 2.55, 2.09 and 2.73, resulting in a mean score of 2.51. ***See* Doc. 80-3, Ex 3-A, Figs. 1-2**. The Selection Memorandum provides further analysis of applicants' scores, noting, among other

---

[27] Pursuant to the Selection Memorandum attached to Defendant's Motion (Doc. 80-3, Ex. 3-A) the 0-5 scoring was the same as described in the preceding footnote. *See* fn 26.

things, that Plaintiff and another candidate "had strong scores regarding strength and experience related to skills and abilities, but their scores were lower in leadership skills and vision." *Id*., ¶ 5. The Selection Memorandum provides the following relating to the panel's selection of Mr. Salas:

> The panel unanimously agreed that Mr. Salas was the most qualified applicant and therefore selected for the Electronic Warfare Tools, Technology and Methodology Technical Domain Team Lead position. Mr. Salas distinguished himself in his ability to think and communicate at a strategic level both technically and organizationally and has the team leadership experience, vision, communication skills, and desire to lead the mission and people required of a technical leader in this diverse organization.

*Id*., ¶ 6.

As the Court concluded for the prior non-selection decisions, these proffered reasons more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions. *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218.

### Pretext Analysis for All Claims.

In response, Plaintiff argues that, for various reasons, Defendant's explanations for his non-selection to all four position are pretextual.[28]

First, Plaintiff asserts that he was "vastly" more qualified for the positions than the selected candidate, and notes that, with respect to his application for *Chief, Modeling/Simulation (M&S) Support Branch* (*x2170*), one panel member, which he purports was the most technically qualified panel member because she had a Ph.D., rated him second highest of all applicants. **Doc. 83 at 30.** The fact that one member rated him more highly is insufficient basis for a finding of discrimination. *Conroy v. Vilsack*, 707 F.3d 1163, 1178 (10th Cir. 2013) ("[Differences of opinion

---

28 The Court addresses this issue as a whole, as Plaintiff has not sufficiently broken down a pretext analysis for each non-selection event. Rather, Plaintiff refers to his disputes of Defendant's Undisputed Material Facts where he provided additional information or conclusions which he alleges demonstrate discrimination or the unreasonableness of Defendant's promotion of other applicants over himself.

among evaluators] is not evidence that either [evaluator] based his or her evaluation on anything other than his or her honest assessment of the [employee]. Rather, it simply indicates that the two individuals disagree as to subjective factors, which one would expect might happen from time to time."). Moreover, Plaintiff's own opinions about his superior qualifications do not give rise to material dispute of fact. *Bullington v. United Airlines*, 186 F.3d 1301, 1318 (10th Cir. 1999) *overruled on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Plaintiff has not shown, as he must, that he was "overwhelming[ly]" more qualified than the other candidates selected for the promotions. *Id.* at 1319. In fact, the evidence presented suggests that Plaintiff's extensive experience was acknowledged and considered during the selection process.

Plaintiff's repeated allegations that the panels "groomed" certain Hispanic applicants for promotion have no merit and are belied by the legitimate explanations for his non-selection and his overall lack of foundation for these allegations. *Notari v. Denver Water Dept.*, 971 F.2d at 590 ("…[I]t is not enough…for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision.").

Furthermore, the rating criteria provided to the panel members and the majority of the interview questions were job-related. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1145-46 (holding that interview criteria which were predetermined and job-related were not excessively subjective); *Pub. Serv. Co. of Colorado*, 2006 WL at *4 (noting that process of assigning numerical scores to job-related criteria did not constitute "the kind of standardless, undocumented and 'wholly subjective' process" required to show pretext).

Plaintiff claims that Flores' explanations are pretextual because he and the panel

20

purportedly emphasized certain criteria when other factors were listed in the job description, or allegedly applied these criteria subjectively in favor of Hispanic and/or younger candidates. **Doc. 83 at 34.** The Court, however, is satisfied that the criteria was not overly subjective, and notes that, even if there had been some subjectivity in listed criteria, that alone is not sufficient evidence of pretext. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (…[T]he existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards."). Although Plaintiff disputes Defendant's evidence that all positions complied with all controlling policies and procedures, and that Plaintiff's age (race and prior EEO activity) was not a factor in his non-selection, Plaintiff has not adduced evidence of how these policies were violated.

Plaintiff Relies on Inapposite Caselaw

In support of his arguments, Plaintiff cites *Garrett v. Hewlett-Packard Co*., 305 F.3d 1210, 1217 (10th Cir. 2002) for the proposition that he has set forth sufficient facts revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." **Doc. 83 at 34.** Defendant correctly argues that *Garrett* is inapposite.

In *Garrett*, the plaintiff consistently, and for many years, obtained similar results in evaluations of his performance. *Garrett v. Hewlett-Packard Co*., 305 F.3d at 1213-14. However, the plaintiff began receiving increasingly negative evaluations and rankings by management coinciding directly with his new involvement with a diversity program aimed at promoting the

hiring of people of color in the defendant's company. *Id*. at 1214. The plaintiff's rankings were consistently downgraded, leading to multiple transfers off of projects, and his evaluations "continued to exhibit a negative tone in marked contrast to those in [the plaintiff's] preceding two decades with [the defendant]." *Id*. The Tenth Circuit found the defendant's stated reasons pretextual, particularly because of its wholly subjective evaluation methods. *Id*. at  1218 ("[The defendant] offered virtually no evidence to support its characterization of its ranking system. It presented no set of objective criteria by which employees are differentiated. In fact, nowhere in the record is it shown how rankings were determined in these meetings. Contrary to the district court's conclusion, on this record a jury could reasonably find that in the ranking process, the opinion of an employee's supervisor was the basis on which rank is established, particularly when the record reflects that rank is so closely linked to the evaluation process.").

Here, unlike *Garrett*, Defendant articulated a series of objective evaluation criteria for these positions as well as a clear grading system. All applicants were asked the exact same questions, and the panel members reviewed resumes and application packages for consistency with those scores. Plaintiff's insistence that certain panelists attached more or less weight to certain criteria, or considered less than all the criteria provided in the KSA's in evaluating applicants is insufficient to demonstrate pretext. *See Conroy v. Vilsack*, 707 F.3d at 1178 (finding irrelevant the fact that some panel members attached different weight to different criteria or that some subjectivity was utilized in the evaluation as "…it is because we expect individuals to disagree with respect to subjective factors that we frequently employ more than one individual to evaluate subjective criteria, as the [employer] did here.") (internal citation omitted); *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 Fed. Appx. 675, 691–92 (10th Cir. 2018) (use of subjective criteria

to reject an otherwise qualified applicant does not automatically establish an inference of discrimination).

Moreover, Plaintiff's subjective interpretation that the panels' decisions were "unreasonable"[29] or that he was more qualified and more experienced than the selected candidates does not give rise to the conclusion of pretext. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007) ("[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs."); *Bullington v. United Airlines*, 186 F.3d at 1318.

## II.   Title VII Retaliation

For similar reasons, Plaintiff's claim for retaliation fail. Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII.   42 U.S.C. § 2000e-3(a); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).   To preclude summary judgment Plaintiff must demonstrate under the *McDonnel Douglas* framework that: (1) he engaged in protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.   *Id.* at 1262-63.[30]

Plaintiff asserts unlawful retaliation for each of his non-selections due to his filing of EEO

---

29 Plaintiff disputed Defendant's statement that the panel unanimously agreed that, for the RF Analysis Technical Domain Lead position, Mr. Salinas "was the most qualified for the position, and that he demonstrated the technical acumen, leadership experience/abilities, communication skills and passion for the mission and people." **Doc. 80 at 9, ¶ 51.** Plaintiff did not dispute that the panel so decided, but argued that it was "unreasonable" to do so in light of all other applicants' more extensive years of experience**. Doc. 83 at 22, ¶ 51(a).**

30 To the extent that Plaintiff is also alleging a retaliation claim under the ADEA, the elements of a prima facie case are identical.   *See Nealey v. Water District No. 1 of Johnson County*, 324 Fed. Appx. 744, 750 (10th Cir. 2009).

complaints. Defendant does not dispute that Plaintiff's EEO filings constitute a protected activity, and there is no dispute that he experienced adverse employment action in that he was not promoted. Defendant focuses its argument on the third prong, namely that Plaintiff fails to show that filing the EEO complaints was causally connected to any of the non-selection decisions. **Doc. 80 at 22.**

Defendant argues that Plaintiff has not demonstrated that the selecting officials had requisite knowledge of his EEO complaints. *Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("Section 2000e–3(a) bars retaliation by an employer only if it is 'because [the employee] has opposed any practice made an unlawful employment practice by [Title VII].' An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.") (internal citation omitted) (emphasis in original). Viewing the facts in the light most favorable to Plaintiff, there is some evidence that at least some of the panel members had knowledge of Plaintiff's prior EEO activity.

Defendant also argues that Plaintiff's EEO complaints, spanning three years, do not form sufficient temporal proximity to establish that Defendant was retaliating for Plaintiff's protected EEO activity. **Doc. 80 at 23.** Plaintiff does not address this line of argument in his Response. Generally, "…[A] plaintiff can establish a causal connection with evidence of 'protected conduct closely followed by adverse action." *Newton v. Wilkie*, 2021 WL 1109194, at *11 (D.N.M. Mar. 23, 2021) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)). However, "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original).

24

The Court concludes that Plaintiff has failed to establish sufficient nexus between the time of his EEO complaints and the alleged retaliatory non-selections. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019) ( finding a three-month gap between protected activity and an adverse action too long to support an inference of causation). Because Plaintiff's prior complaints were made over a three year period, Plaintiff cannot rely on the temporal proximity of the non-selection events.  Furthermore, even if this Court were to conclude that Plaintiff's EEO activity was relevant, Plaintiff would still have to put forward additional evidence of causation.  *See Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1266 (10th Cir. 2009) (noting that temporal proximity alone is not sufficient to establish a causal connection in Title VII retaliation claims); *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997) (holding that four-month lag between protected activity and adverse action is not sufficient to justify inference of causation).  Thus, Plaintiff must show something more. *Id*. ("Plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that [his] protected activity was a but-for cause of the adverse employment action.") (internal quotation omitted).

As detailed in the preceding sections, Plaintiff has given this Court no reason to doubt the veracity of Defendant's legitimate, non-discriminatory reason for filling the positions with other candidates.  Therefore, the Defendant is entitled to summary judgment with respect to Plaintiff's retaliation claims.

## III.   Age Discrimination

Plaintiff also asserts claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") with respect to his non-selection for both the RF Analysis Technical Domain Leader (TDL) (x3100) and for Technical Domain Lead (TDL) for Tools Techniques, and

25

Methodologies (TTM) (x4532) positions.  The ADEA makes it unlawful for an employer to take an adverse action against an employee because of that employee's age. 29 U.S.C. § 623(a)(1).

<u>The Law Relating to Age Discrimination</u>

"Under the ADEA, plaintiff must prove that age was a determining factor in defendant's treatment of the complaining employee." *E.E.O.C. v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988) (citing *Perrell v. FinanceAmerica Corp.,* 726 F.2d 654, 656 (10th Cir.1984)). "Plaintiff need not prove that age was the *sole* reason for the employer's acts, but must show that age 'made the difference' in the employer's decision." *Id*. (citing *EEOC v. Prudential Federal Savings & Loan Ass'n,* 763 F.2d 1166, 1170 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) (emphasis in original)). Moreover, "the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.' " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993)).

The *McDonnell Douglas* burden-shifting framework remains applicable. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011); *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("Although we recognize that *Gross* [*v. FBL Fin. Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)] created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims."). Therefore, to make out a prima facie case based on a failure to promote, the plaintiff must show: (1) he was forty years of age or older; (2) he applied for and was qualified for the position; (3) he was not selected for the position; (4) a

younger candidate was selected to fill the position. *MacKenzie v. Denver*, 414 F.3d 1266, 1277-78 (10th Cir. 2005); *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir. 1996).

Here, Defendant concedes that Plaintiff was over the age of 40 and that he applied and was not selected for the relevant positions. **Doc. 80 at 16.** Although Defendant does not expressly concede or address that Plaintiff was qualified for the position, Defendant's undisputed material facts relating to these two positions assert that "Five applicants were deemed qualified and forwarded for consideration by CPAC," which included Plaintiff and "CPAC forwarded six applications meeting the minimum qualifications for consideration," including Plaintiff's. **Doc. 80 at 8-9, ¶¶ 44, 56.** Thus, there is no dispute that Plaintiff was qualified for these positions. Defendant also asserts that "Plaintiff cannot establish that the selected candidates were substantially younger and cannot bring forth any evidence that age was the but-for reason for his non-selection." **Doc. 80 at 16.** However, Defendant's undisputed material facts state that the employee selected for Technical Domain Lead (TDL) for Tools Techniques, and Methodologies (TTM) (x4532), Jorge (Francisco) Salas, "was Hispanic and younger than Plaintiff." **Doc. 80 at 10, ¶ 62.** As for the position of RF Analysis Technical Domain Leader (TDL) (x3100), the Court finds that the record adequately reflects that the selected applicant, Jorge Salinas, was younger than Plaintiff. Therefore, the Court concludes that Plaintiff has established a prima facie showing of discrimination.

As the Court concluded for the prior non-selection decisions, Defendant's proffered reasons for Plaintiff's non-selection more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions. *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218. Plaintiff's arguments under the ADEA are effectively identical to those he advanced relating to his

other claims and he has not explained how any of the predetermined criteria utilized by Defendant disadvantaged older workers. *Id.* Despite Plaintiff's assertions to the contrary, nothing suggests that Defendant has a policy of age discrimination.

In sum, Plaintiff has put forward no credible evidence that the decisions of the panel members, or any other decision-maker at White Sands, were motived by discrimination or retaliation. Because Plaintiff has not met his burden to show that any of Defendant's explanations are suspect, Defendant is entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Defendant is entitled to summary judgment on Plaintiff's race discrimination and retaliation claims under Title VII as well as his age discrimination claims under the ADEA.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 80**) is **GRANTED.**

**IT IS SO ORDERED.**

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

28