## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THOMAS E. MAXWELL,

      Plaintiff,

v.

                                      No. 2:18-cv-00824-KWR-SMV

JOHN WHITLEY, Acting Secretary[1],
DEPARTMENT OF THE ARMY,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant Acting Secretary of the Army John Whitley's Motion for Summary Judgment. **Doc. 81**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is **WELL-TAKEN** and therefore, is **GRANTED**.

### BACKGROUND

This is a discrimination and retaliation case. At the relevant times, Plaintiff Thomas E. Maxwell was an employee of the Department of the Army Research, Development and Engineering Command, Army Research Laboratory ("ARL"), at the U.S. Army White Sands Missile Range, in New Mexico.

Plaintiff filed this suit against Defendant alleging, in the Second Amended Complaint ("SAC") (**Doc. 42**), race discrimination and retaliation in violation of Title VII of the Civil Rights

---

1 Pursuant to Fed. R. Civ. P. 25(d) (automatic substitution of successor public official), former Secretary of the Army Mark T. Esper was substituted by John Whitley, Acting Secretary of the Department of the Army.

Act of 1964, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-632 ("ADEA"). Among other things, the SAC alleges that Plaintiff was overlooked in favor of "Hispanic individuals" and "younger applicants over older applicants", and that Defendant "retaliated against employees for making complaints of unlawful discrimination." **Doc. 42, SAC, ¶ 2.** The SAC further alleges that Defendant removed Plaintiff from work on the Unmanned Aerial System ("UAS") in reprisal for his protected activity in filing a series of EEO complaints.

The instant motion seeks summary judgment on Plaintiff's claims for race discrimination (Count I) age discrimination (Count II) and retaliation (Count III) specific to his claims that he was removed from work on the UAS program and that he received poor performance appraisals in 2017 and 2018:

1) Removal of Plaintiff from work on the UAS/Drone program - ARARL17JUN01948 (x1948) (August 2017) (race and retaliation),

2) 2017 Performance Appraisal - ARARL18JAN00105 (x0105) (April 2018), (race, age, and retaliation),

3) 2018 Performance Appraisal - ARARL19JAN00232 (x0232) (April 2019) (race, age, and retaliation).

## UNDISPUTED FACTS[2]

Plaintiff began working at the ARL at White Sands Missile Range ("White Sands") in New Mexico in 1985 while in school, and commenced full-time employment upon graduation in 1986. Plaintiff is currently employed at ARL as an Electronics Engineer for the ARL, Survivability/Lethality Analysis Directorate (SLAD).[3] His division has six branches, each with a

---

2 The Court includes the following undisputed facts and notes Plaintiff's objections where relevant.

3 Plaintiff does not dispute this but notes that the name of the organization may have changed and that it is still "encompassed within the Army". **Doc. 85 at 2, Plaintiff's Response to Defendant's Statement of UMF's, ¶ 4.**

Branch Chief. Plaintiff testified that, as of August 2020, to his knowledge, two of the three branch chiefs at White Sands are white, and his direct branch supervisor is Hispanic.[4] Plaintiff was over 40 years old at the time relevant to this action.[5] As detailed in the following section, regarding the instant motion, Plaintiff's SAC arises out of his removal from UAS project and two performance appraisals in 2017 and 2018.

<u>Removal of Plaintiff from work on the UAS/Drone program - ARARL17JUN01948 (x1948) (August 2017)</u>

While employed at ARL, Plaintiff was assigned to work on a drone UAS program. There is a dispute as to whether funding was limited for Plaintiff's UAS assignment. About halfway through the employee rating period ending in September 2017, Plaintiff was assigned to other customer funded areas. On or about May 12, 2017, Plaintiff's then supervisor, Ms. Maria Isabel Goode ("Goode"), instructed him to cease working on the UAS program.[6] Goode informed Plaintiff that, although there was no longer funding for the UAS program, there were other projects and programs with a use for the equipment.[7] Plaintiff proceeded to give away several thousand dollars' worth of UAS equipment to an employee within a different sector of the laboratory, without informing anyone in his chain of command.[8] Plaintiff was directed by his supervisor to

---

4 Although Plaintiff disputed Defendant's timeline with respect to when there were non-Hispanic officials at White Sands, his Response does acknowledge that, as of the time of his first non-selection, there were at least some non-Hispanic management officials at White Sands. *See* **Doc. 85 at 2-3, ¶ 5(a)** ("However, at the time of his first non-selection in 2016, [Plaintiff] stated that there were six Hispanic management officials and only two Non-Hispanic White management officials serving at White Sands Missile Range.").

5 There is no dispute that Plaintiff was born in 1962 and was 54 years old as of 2016. **Doc. 85 at 1, ¶ 1.**

6 Defendant asserts in its Undisputed Material Facts that "Plaintiff's race, age, or EEO activity were not factors considered at any time when determining whether the UAS program could continue." **Doc. 81 at 5, ¶ 16.**

7 Plaintiff disputes that funding was limited or had run out, asserting that at the time he was instructed to cease working on the UAS program, "approximately $82,000" was transferred out of his UAS account to an unknown one. He further asserts that funding was generally poorly tracked at the time and that funds running out was a common excuse employed by defendant to justify reassigning personnel to other activities. **Doc. 85 at 3-4, ¶ 8(a).** Defendant's Reply correctly notes that these allegations are absent support in the record, and instead are assertions provided in Plaintiff's Declaration, absent any documentary support. *See* **Doc. 81-1, Ex. 1, ¶ 3.**

8 Plaintiff disputes the relevance of this fact, and although he does not dispute that he gave away this equipment,

3

retrieve the equipment and transfer it to another employee to support a "Rapid Initiative" project.[9] Plaintiff was not placed on the Rapid Initiative project because he indicated that he was not interested in working on such projects. It is undisputed that Plaintiff was assigned to develop an airworthiness certification and a Safety Standing Operating Procedure ("SOP") for the UAS Drones.[10]

*Performance Appraisal for the Rating Period October 1, 2016 to September 30, 2017*
*ARARL18JAN00105 (x0105)*

Plaintiff alleges that he received a poor work evaluation in January 2018, for the October 1, 2016 to September 30, 2017 performance period due to his race, age, and prior opposition to unlawful discrimination in the workplace and that his evaluation was negatively affected by the removal of the UAS project from his work assignments. The performance review process has four rating categories: (1) Unsatisfactory, ranging from 0-49; (2) Successful, 50-69; (3) Commendable, 70-84; and (4) Distinguished, 85-100. Each of these ratings has an associated number of pay pool "shares" (Distinguished 3-4 shares, Commendable 2-3 shares, Successful 0 or 1 share, and Unsatisfactory 0 shares).

In the prior appraisal period of October 1, 2015 to September 30, 2016, Plaintiff received a score of 70, which is the lowest score within the rating of "commendable."[11] For that rating

---

asserts that he transferred the equipment to a "sister organization" in the belief that it could use the equipment and that, to his knowledge, he was not required to notify his chain of command at the time. **Doc. 85, Response to Defendant's Statement of UMF's at 6-7, ¶ 12(a); Doc. 85-1, Ex. 1, ¶ 4 (Maxwell Declaration).**

9 Plaintiff disputes the relevance of this fact, stating it was never noted in his performance appraisal, never used as the basis of disciplinary action and was not conduct in violation of any policy. **Plaintiff's Response to Defendant's Statement of UMF's at 7, ¶ 13(a).** Plaintiff does not cite anywhere in the record in support of his position and the Court finds the answer effectively non-responsive and therefore deems Defendant's fact undisputed. *See* Fed. R. Civ. P. 56(c).

10 Plaintiff disputes the timing of this assignment, asserting in his Declaration that he had already been working on such projects "for several years." **Doc. 85-1, Ex. 1, ¶ 5.** To the extent that Plaintiff disputes, pursuant to Federal Rule of Evidence 401(b), the relevance of this fact by advancing conclusory legal argument, the Court finds this is not a genuine dispute.

11 Pursuant to the Declaration of Plaintiff's supervisor, Ms. Goode, there are four rating categories: (1) Unsatisfactory

4

period, Jose Gonzales, Electronics Engineer, with Richard Flores ("Flores"), Information and

Electronic Protection Division Chief, DB-1301-05, as his senior rater. For the performance period

of October 1, 2016 to September 30, 2017, Plaintiff was rated "successful," with a score of 68.4.

Plaintiff received one "share." Plaintiff attests, and Defendant does not dispute in its Reply, that

this was the lowest rating he had received in his career. **Doc. 85-5, Ex. 5.** Plaintiff's supervisor

Goode, Cyberspace and Mission Assurance Branch Chief, and Flores was once again his senior

rater. Goode evaluated Plaintiff's performance based on his fiscal year accomplishments, applying

the organization's established criteria used to rate each employee.[12] The performance elements are

applied to all employees during review. These elements were established as a part of Plaintiff's

Performance Plan at the beginning of the appraisal period.[13]

  For the October 1, 2016 – September 30, 2017 appraisal period, Plaintiff was rated

---

ranges from 0-49; (2) Successful is 50-69; (3) Commendable is 70-84; and (4) Distinguished is 85-100. Each of these ratings has an associated number of pay pool "shares" (Distinguished 3-4 shares, Commendable 2-3 shares, Successful 0 or 1 share, and Unsatisfactory 0 shares). Exhibit 4 attached to Defendant's Motion for Summary Judgment includes the Performance Appraisal Form for Plaintiff's prior appraisal period, October 1, 2015 to September 30, 2016. For the October 1, 2016 – September 30, 2017 appraisal period, Plaintiff was rated on five elements: (1) Technical Competence, (2) Cooperation, (3) Communication, (4) Management of Time and Resources, and (5) Customer Relations. Technical Competence and Cooperation were identified as critical elements with assigned weight of 45, 15, 15, 15 and 10 respectively. Plaintiff received scores of 35.6, 8.8, 9.20, 9.6 and 6.8. Under "Payout," the form indicates that Plaintiff was awarded "2" shares, with a pay increase of "3030" and a bonus of "0". In the mandatory "Rater Comments" section, which instruct the rater that "Comments should relate to performance and/or potential, and show reflect the rating," the rater stated "[W]rote UAS Operational Requirements and Safety documents and worked through the WSMR Frequency office and secured a Radio Operators Permit, which allowed operation of UASs on WSMR. Provided technical assistance and developed the cost sharing structure for the ARL-NMSU/PSL CRADA." **Doc. 81-4, Ex. 4.**

12 Plaintiff offers a nonresponsive dispute, providing a series of factual assertions over two pages relating to his argument that he was retaliated against in his removal from the UAS program involving, among other things, that over half of his job objectives were changed or cancelled during the relevant fiscal year; that Goode and at least one other management official were involved in stopping his work on the UAS program; that Goode had prior knowledge of his EEO activity; and that Goode contradicted herself in various testimony when compared to the testimony of another employee witness, Paige Mergler, who was present at the annual pay pool meeting. **Doc. 85 at 13-15, ¶ 23(a).** To the extent that these nonresponsive factual allegations have relevance elsewhere, the Court concludes that they are unsupported by the record.

13 Plaintiff disputes Defendant's UMF's (Doc. 81, ¶ 23), relating to the evaluation criteria applied to his appraisal. However, Plaintiff does not actually dispute the content of the UMF, rather, he launches into a nonresponsive recitation of factual allegations relating to his arguments involving retaliation and thus does not raise a genuine dispute of fact.

on five elements: (1) Technical Competence, (2) Cooperation, (3) Communication, (4) Management of Time and Resources, and (5) Customer Relations. Technical Competence and Cooperation were identified as critical elements. Goode assigned each critical element a rating based on the Plaintiff's accomplishments towards those criteria, calculating a final collective rating. Plaintiff nominally disputes whether the rating was calculated correctly but does not cite any record to make a genuine dispute.  The Pay for Performance appraisal process evaluates an employee's accomplishments during the rating period. In appraising Plaintiff, Goode considered Plaintiff's self-assessment, as well as positive and negative feedback from others.[14] Plaintiff was neither the lowest nor the highest rated employee that Goode supervised.[15]

Performance Appraisal for the Rating Period October 1, 2017 to September 30, 2018 – ARARL19JAN00232

Plaintiff next alleges that he received a poor work evaluation in January 2019, based on an appraisal of his performance period from October 1, 2017 to September 30, 2018 due to his race, age, and retaliation for his EEO activity. For the October 1, 2017 to September 30, 2018 period, Chris Rodriguez, Supervisory Electronics, Engineer, was his rater, with Cedric Baca, Supervisory General Engineer, as his senior rater. Goode was not involved in Plaintiff's performance appraisal or evaluation for this rating period.

In evaluating Plaintiff, Rodriguez calculated Plaintiff's performance based on his accomplishments for the fiscal year, as applied to the organization's established criteria to score each employee. The performance elements criteria are applied to all employees. These elements

---

14 Plaintiff does not dispute this, but argues that these were not the only factors considered.
15 Defendant assert that "Plaintiff's race or prior EEO activity was not a factor in any decisions Ms. Goode made regarding Plaintiff's performance or employment." **Doc. 81 at 7, ¶ 31.** Plaintiff disputes this. However, to the extent Plaintiff objects to these facts the Court finds that Plaintiff's objections are either conclusory or unsupported by the record.

were established as part of Plaintiff's Performance Plan at the beginning of the appraisal period.[16] Plaintiff was again rated on five elements: (1) Technical Competence, (2) Cooperation, (3) Communication, (4) Management of Time and Resources, and (5) Customer Relations. Technical Competence and Cooperation were identified as critical elements. The Pay for Performance appraisal process evaluates an employee's accomplishments during the rating period. Rodriguez assigned each critical element a rating based on the Plaintiff's accomplishments during that time, to calculate a final collective rating. In doing so, while Rodriguez considered Plaintiff's self-assessment, the only items considered were those accomplishments related to Plaintiff's performance plan objectives. Rodriguez evaluated Plaintiff's accomplishments using the Performance Element Scoring Table.[17] Plaintiff was rated according to his accomplishments as they related to the performance plan objectives. Defendant asserts that Rodriguez did not consider Plaintiff's age, race or prior EEO activity as factors in the performance appraisal rating.[18]

---

16 Plaintiff disputes Defendant's UMF (Doc. 81, ¶ 36), relating to the evaluation criteria applied to his appraisal. However, Plaintiff does not actually dispute the content of the UMF, rather, he cites to prior responses to other UMF's (21 and 33(a)) for the premise that over a three year period his ratings declined, resulting in a decrease from two shares, to one share, to zero. The Court finds this nonresponsive to the fact alleged by Defendant, and thus does not raise a genuine dispute of fact. Additionally, in its Reply, Defendant argues that Plaintiff's prior ratings have no bearing on his 2018 performance evaluation, notes that Rodriguez was not involved in Plaintiff's prior evaluations and emphasizes that Plaintiff's ratings were designated as "successful." **Doc. 92 at 10.** Further, Defendant states that "Plaintiff offers no evidence on which to base a conclusion that his performance during the FY2018 merited any additional consideration or increased rating, alleging only that he received the second lowest score." *Id.*

17 Plaintiff disputes this statement of fact (Defendant's UMF ¶ 40) by arguing that he has shown the rating official was aware of prior EEO activity and noting that he received his lowest performance ratings in his career. However, the Court finds this nonresponsive to the fact actually alleged by Defendant, and thus does not raise a genuine dispute of fact. Moreover, in disputing this fact, Plaintiff cites to his Response to Defendant's UMF 33, which in turn cites to and relies upon the Declaration of another employee, identified as Dr. Debroux, a non-party to this action, who had filed his own EEO complaints. A review of the relevant exhibit (Doc. 85-14, Ex. 14) reveals that Debroux's statements are merely his conclusory opinions and speculation in response to questions posed to him, presumably, although not indicated in the exhibit, by an EEO investigator, absent reference to any concrete documentation. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").

18 Plaintiff disputes that he was rated according to his accomplishments and that Rodriguez did not consider his age, race or prior EEO activity. However, Plaintiff cites to an incorrect Response to Defendant's UMF which contains no facts. *See*. **Doc. 85 at 23, ¶¶41(a)-42(a).** Even assuming Plaintiff intended to cite to the preceding Response to UMF

Plaintiff was rated "successful" with a score of 63.9. This score replaced Plaintiff's prior score as the lowest he had ever received in his career, and his rating was second-lowest in his branch for that period. Plaintiff asserts, and Defendant does not dispute in its Reply, that Rodriguez had knowledge of Defendant's prior EEO activity.

As Division Chief and pay pool manager, Cedric Baca led the pay pool meeting, which meets annually. At the pay pool meetings, the division and branch chiefs meet to discusses each of their employee's contributions and accomplishments to determine an award of shares. Each branch chief is given a few minutes to summarize and present to the pay pool panel information relating to each employee. Typically, a pay pool consists of between 60-70 employees. Baca reviewed and signed off on Plaintiff's appraisal and rating based upon the recommendation of Plaintiff's supervisor, Rodriguez.[19] Based on his score, Plaintiff was not awarded any pay pool shares for the performance period. It is undisputed that Baca had no knowledge of Plaintiff's prior EEO history.[20]

Plaintiff sued the Army, through Secretary Mark T Esper,[21] alleging race and age discrimination as well as retaliation based on his prior, protected EEO activity relating to his removal from the UAS program, his poor performance evaluations, and compensation. Defendant then filed the instant Motion for Summary Judgment.

**STANDARD OF REVIEW**

---

40, Plaintiff did not create a genuine dispute of material fact, as discussed in the preceding footnote.

19 Plaintiff does not dispute that Baca reviewed and signed off on Plaintiff's appraisal but argues that his reliance upon Rodriguez's recommendation was unreasonable. **Doc. 85 at 24, ¶ 47(a).**

20 Plaintiff "partially" disputes this inasmuch as he notes that Rodriguez had knowledge of his EEO history and that Baca signed off on the review based on Rodriguez's recommendation. Plaintiff purports that this therefore renders Baca's lack of knowledge irrelevant. **Id. at 25, ¶ 49(a).**

21 The caption has since been updated to reflect the successor public official, John Whitley, as acting secretary, Department of the Army.

A motion for summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp*., 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id*. The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). A court cannot weigh the evidence and determine the truth of the matter.  Rather, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)). A mere scintilla of evidence in the nonmovant's favor is not sufficient.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## DISCUSSION

The parties agree that the Court should analyze Plaintiff's discrimination and retaliation claims under Title VII, § 1981 and ADEA under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[22]  Under this framework, Plaintiff must first establish a prima facie case.  If Plaintiff does so, this "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's*

---

22 In his Response Brief, Plaintiff states that he "generally agrees that the burden-shifting analysis in *McDonnell Douglas Corp. v. Green* applies governs [sic] the Court's analysis of this case," but argues that the "extensive facts" gathered in discovery provide direct evidence of discrimination and meets the *McDonnell* standard. *See* Doc. 85 at 26.

*Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)). The burden of production then shifts to Defendant to show that "it had a legitimate, nondiscriminatory reason for the adverse action." *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes this showing, Plaintiff then bears "the full burden of persuasion to show that the defendant discriminated on the illegal basis" of race or age. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124–25 (10th Cir. 2005); *Nunez v. Lifetime Prod., Inc.*, 2018 WL 921537, at *1–2 (10th Cir. 2018). "The plaintiff may do so by showing that the proffered reason is pretextual." *Bryant v. Farmers Ins. Exch.*, 432 F.3d at 1124–25.

A plaintiff may establish pretext by pointing out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons." *Lobato v. New Mexico Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013). The Tenth Circuit has opined that an employee generally may establish pretext in one of three ways. An employee may present evidence that: "(1) the employer's stated reasons for an adverse employment action are false; (2) the employer acted contrary to a written company policy prescribing the employer's action against the employee under the circumstances; or (3) he was treated differently from other similarly situated employees who violated protocols of comparable seriousness." *Fulkerson v. Colvin*, 2018 WL 1726245, at *4 (D.N.M. Apr. 6, 2018) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004)).

## I.    Title VII Race Discrimination

To establish a prima facie claim of disparate treatment based on race in a failure to promote context, the plaintiff must show: (i) the plaintiff is a member of a protected class; (ii) the plaintiff was qualified and applied for the position; (iii) despite the plaintiff's qualifications, [he] was not promoted to the position; and (iv) the promotional opportunity was filled or remained open. *See Serrano v. Veneman*, 410 F. Supp. 2d 1049, 1058 (D.N.M. 2005) (citing *Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1306–07 (10th Cir.2005)). "[T]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.' " *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1227 (10th Cir.2000)(quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

The Tenth Circuit has opined that the *McDonnel Douglas* formulation should be modified in cases, such as the one before this Court, of "reverse discrimination."  *Notari v. Denver Water Dept.*, 971 F.2d 585, 588-89 (10th Cir. 1992) ("…[I]t is appropriate to adjust[ ] the prima facie case to reflect the reverse discrimination context of a lawsuit because the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group.") (internal quotations omitted). In *Notari*, the Tenth Circuit explained its position:

> We find the reasoning that supports the decisions to modify the *McDonnell Douglas* formulation for reverse discrimination cases persuasive. As the Supreme Court has indicated, "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). We explained in *Livingston* that it is appropriate to "adjust[ ] the prima facie case to reflect" the reverse discrimination context of a lawsuit because "the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an

11

historically favored group." *Livingston,* 802 F.2d at 1252. The *McDonnell Douglas* presumption—that is, the presumption that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision—is valid for a reverse discrimination claimant only when the requisite background circumstances exist. Thus, we agree that a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.

*Id.* at 589.

Plaintiff argues that for each of the relevant EEO claims he has presented sufficient evidence to establish a prima facie case of discrimination "and/or" retaliation "regardless of whether [it] is best characterized as "direct" or 'circumstantial'...."[23] **Doc. 85 at 29.** Plaintiff posits that he has established a prima facie case through Defendant's own inconsistent statements and "several instances" where Defendant's employees' explanations were pretextual and unworthy of belief. *Id.* at 29-30. The Court disagrees.

First, Plaintiff's claims fail in that he has not adequately evidenced that Defendant is an unusual employer that discriminates against Caucasians in favor of Hispanic employees and has not shown "a reasonable inference that but for the plaintiff's status the challenged decision would not have occurred." *Notari v. Denver Water Dept.*, 971 F.2d at 590. As in his briefs opposing summary judgment on his non-selection claims (**Doc. 83**), which Plaintiff cites to in support of his position here, Plaintiff again asserts in conclusory fashion that "to the extent necessary," he has shown sufficient facts to demonstrate that Defendant was an "unusual employer" **Doc. 85 at 34.**

Although Plaintiff asserts that Hispanic candidates were "groomed" for promotion to his

---

23 Direct evidence is evidence which, if believed, proves the existence of a fact in issue without inference or presumption. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

detriment, Plaintiff confusingly cites only to "specific facts" in his prior Response ("Doc. 83 at 16, Response to UMF 38"), which in turn cites to another response to another UMF in that motion regarding his non-selection for one position, for the argument that he has appropriately shown intentional discrimination in favor of Hispanic employees over non-Hispanic individuals. **Doc. 85 at 35.** Plaintiff summarily concludes that, "in all of his EEO claims" he has likewise shown "specific facts" proving his employer was the requisite "unusual" type as described in *Notari*.

The Court notes that, other than his introductory sentence acknowledging the applicability of the *McDonnell* standard,  the entirety of Plaintiff's Response (Argument Section I) relating to whether he has established a prima facie claim of discrimination and retaliation is composed solely of dubious factual argument, conclusory inferences, and conjecture absent a single citation to caselaw in support. **Doc. 85 at 26-30.**  Moreover, even if the Court were to accept Plaintiff's legally unsupported arguments, which it does not, the Court is unconvinced that Plaintiff's allegations equate to an adverse employment action within the meaning of Title VII or that Plaintiff has met his burden to demonstrate that Defendant's legitimate, nondiscriminatory reasons for his removal from the UAS program and his performance appraisal ratings were pretextual.

<u>Whether Plaintiff has Suffered an Adverse Employment Action</u>

Defendant argues that Plaintiff cannot establish that he has suffered an adverse employment action under Title VII. **Doc. 81 at 13.** Defendant states that Plaintiff's removal from or cessation of the UAS program is akin to a change in assignment, and that Plaintiff did not suffer a reduction in pay, a demotion, or change in benefits constituting adverse employment action. Plaintiff contends that Defendant's caselaw is distinguishable and that in each EEO complaint relating to his performance and job duties he has shown "tangible monetary losses, as well as

significant other changes in the terms and conditions of his employment. **Doc. 85 at 32.** Specifically, he assert that: (1) the UAS removal directly resulted in lowered monetary compensation during the performance rating period, (2) this removal was used against him at the pay pool meetings thereby resulting in only receiving one share, and (3) for the following 2017-2018 performance period he received no shares, which adversely affected his future pay and retirement amounts. *Id.*

The Law Regarding Adverse Employment Action

The Tenth Circuit has liberally defined an adverse employment action to constitute more than just monetary losses. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). In *Annett v. Univ. of Kansas* (371 F.3d 1233, 1239 (10th Cir. 2004)), the Tenth Circuit explained the expanded definition:

> In so defining the phrase [adverse employment action], we consider acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996). Therefore, an action that significantly harms a plaintiff's future employment prospects may be considered an adverse action. *See Berry,* 74 F.3d at 986 (holding that the filing of false criminal charges constituted an adverse employment action because of its potential to harm future employment prospects); *but see Aquilino v. Univ. of Kan.,* 268 F.3d 930, 936 (10th Cir.2001) (rejecting plaintiff's claim that denial of an appointment as a research associate constituted an adverse action when the alleged harm to her future employment prospects was speculative and rested solely in her untested belief in an alternative career path as a private scholar). However, "a mere inconvenience or an alteration of job responsibilities," will not suffice. *Sanchez,* 164 F.3d at 532 (quotation omitted).

*See also Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010); *Hyman v. New Mexico State Univ.*, 2020 WL 1514801, at *21 (D.N.M. Mar. 30, 2020) (discussing the development of the law in the Tenth Circuit relating to "materially adverse employment action").

Here, the Court is not convinced that Plaintiff has demonstrated adverse employment action on the basis of his withdrawal from or removal of the UAS project and reassignment to another

project, as well as for his "successful" appraisals ratings. The record demonstrates that Plaintiff was offered other contributory opportunities, such as on "Rapid Initiatives", but he informed his employer that he did not desire to work on those projects. **Doc. 81-1, Ex.1, ¶ 22.** As such he was assigned to other projects. Despite Plaintiff's efforts to distinguish Defendant's caselaw (*See* Doc. 85 at 33-34), the Court finds that Plaintiff has not evidenced that a "successful" appraisal constitutes adverse action, even if he received a lower bonus share than desired after one review and no bonus share following the other review. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) ([The plaintiff has not raised an inference the rating 'meets expectations' is a negative evaluation…"); *Paige v. Donovan*, 2011 WL 5520291, at *14 (D. Colo. Aug. 1, 2011), *report and recommendation adopted, Paige v. Donovan*, 2011 WL 5520298 (D. Colo. Nov. 14, 2011), *aff'd, Paige v. Donovan*, 511 Fed. Appx. 729 (10th Cir. 2013) (The plaintiff's allegations that a "Fully Successful" rating resulted in denial of a bonus does not qualify as an adverse employment action); *Hill v. Potter*, 2002 WL 226755, at *11 (N.D. Ill. Feb. 14, 2002), *aff'd, Hill v. Potter*, 352 F.3d 1142 (7th Cir. 2003) ("[L]oss of a bonus is not an adverse employment action ... where the employee is not automatically entitled to the bonus."). [24][25] Thus, the Court concludes that Plaintiff did not experience an adverse employment action within the meaning of Title VII.

<u>Defendant Provides Legitimate, Nondiscriminatory Reasons for Plaintiff's Removal from</u>

---

[24] In addition to *Meredith v. Beech Aircraft Corp* and *Paige v. Donovan*, which Plaintiff seeks to distinguish, Defendant cited to *Brenna v. Salazar*, 2010 WL 582357, at *12 (D. Colo. Feb. 17, 2010) and *Rivera v. Levitt*, 88 F. Supp. 2d 1132, 1143–44 (D. Colo. 2000), *aff'd sub nom. Rivera v. Pitt*, 44 Fed. Appx. 934 (10th Cir. 2002). The Court concludes that *Brenna* and *Rivera* both support Defendant's position that a "successful" rating does not constitute an adverse employment action and notes that Plaintiff did not attempt to distinguish these cases.

[25] Plaintiff argues that Defendant's cases are distinguishable because here he was entitled to a bonus based on the "pay for performance" system employed at ARL and thus not discretionary awards as in Defendant's caselaw citations. **Doc. 85 at 13.** However, the Court agrees with Defendant that the award of "shares" to its employees is most similar to a discretionary bonus given that the performance appraisal ratings merely entitled employees to a potential range of shares; it did not guarantee them. Nor has Plaintiff adequately shown that the loss of these discretionary shares actually impacts salary or retirement benefits. Even though all doubts must be resolved in Plaintiff's favor, allegations alone will not defeat summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

the UAS Program and His Two Performance Appraisal Ratings

Even assuming, *arguendo*, that Plaintiff had established a prima facie case of discrimination, and had demonstrated an adverse employment action, Defendant has set forth legitimate, nondiscriminatory reasons for its removal of Plaintiff from the UAS program as well as for its performance review determinations. Once a plaintiff makes out a *prima facie* case of discrimination, the employer must articulate a legitimate, non-discriminatory reason for its decision—in this case, the resultant program removal and performance ratings. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008); *MacKenzie v. Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005). "[This] does not require the defendant to explain any differences in treatment between the plaintiff and others. In other words, step two is not a comparative step." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting *EEOC v. Flasher Co.,* 986 F.2d 1312, 1318 (10th Cir.1992)).

Ultimately, the burden shifts back to the plaintiff to prove that the employer's stated reason was a pretext for discrimination. *Id.* A plaintiff may demonstrate pretext "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and thence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The Court will address Defendant's articulated reasons for its decisions as well as Plaintiff's arguments regarding pretext.

Removal of Plaintiff from work on the UAS/Drone program - ARARL17JUN01948 (x1948) (August 2017)

With respect to this Plaintiff's removal from the UAS program, Defendant has put forward a legitimate, nondiscriminatory reason for the decision. Goode, the Branch Chief of Cybersecurity

Analysis and Assessment Division (CAAD) of the Survivability/Lethality Analysis Directorate (SLAD) at the time relevant to Plaintiff's Complaint, testified that the funds available for the associated equipment and for Plaintiff's labor were limited and ran out. **Doc. 81-1 Ex. 1, ¶ 18.** She attests that she informed Plaintiff that there were "other efforts" available to him for which drones were being used and that Plaintiff was assigned to and supplied funding for other projects when he indicated he was uninterested in "Rapid Initiative" opportunities. *Id.*, ¶ **19, 22-23.** Furthermore, Goode attests that Plaintiff was later rated on the remaining objectives and the partial work he had completed on the removed objectives. *Id.*, ¶ **24.** These proffered reasons more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions.  *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218.

Plaintiff's 2017 Performance Appraisal (x0105)

Defendant has also put forward a legitimate, non-discriminatory explanation for Plaintiff's 2017 appraisal rating. The Pay for Performance appraisal process contains detailed criteria for evaluators of employees. In her Affidavit, Goode attests that the appraisal process evaluates an employee's accomplishments and each accomplishment is rated in accordance to critical elements designated for improvement or evaluation at the beginning of the rating cycle. ***See* Goode Declaration**, **Doc. 81-1, Ex. 1, ¶ 5.** Goode attests that experience and seniority are not scoring criteria. *Id.*, ¶ 4. She attests that she incorporates feedback from others, and that in Plaintiff's case, she received input from a Mr. Norman Comer, Physicist, and Mr. Frank Lopez, Electronics Engineer. *Id.*, ¶ 14. Goode states that she received both positive and negative feedback:

> Mr. Lopez reported negative feedback, stating Mr. Maxwell refused to assist him and his team on a counter Unmanned Aerial System (UAS) project. Mr. Lopez's input goes directly toward a lack of cooperation as a critical element where

cooperation is defined. Mr. Comer provided positive feedback how Mr. Maxwell was able to come in at midpoint and provide assistance for one of the programs.

*Id*., at ¶¶ 15-16.

The Performance Appraisal Form displays five critical elements, (1) Technical Competence, (2) Cooperation, (3) Communication, (4) Management of Time and Resources, and (5) Customer Relations with a weight assigned to each element of 35, 25, 15, 15 and 10 respectively, totaling 100. Plaintiff received a score of 28, 13.5, 9.6, 10.6, and 6.8 for these respective criteria, with a total score of 68.4. **Doc. 81-1, Ex. 1-A** (Performance Appraisal Form). In the mandatory "Rater Comments" section, which instruct the rater that "Comments should relate to performance and/or potential, and show reflect the rating," Goode provided an analysis of Plaintiff's work, noting, among other things, that he was "instrumental" in development of certain projects and that "he participated in several field experiments…without hesitation." *Id*.

The performance criteria is applied equally to every employee in relation to each employee's Performance Plan at the beginning of the relevant appraisal period. Based on Plaintiff's accomplishments for the fiscal year aligned with the preestablished criteria, Plaintiff's score of 68.4 fell within the "successful" rating. At the bottom of the form, Plaintiff, Goode, and Senior Rater Flores have all signed the form. *See* **Doc. 81-1, Ex. 1-A.** It is undisputed that this was 1.6 points lower than his rating the prior year. It is also undisputed that Plaintiff was neither the lowest nor the highest rated employee that Goode supervised. Plaintiff received one share after the annual pay pool meeting of supervisors.[26]

The Court finds that the evaluation and ratings process was rational, transparent, and

---

[26] Plaintiff's Performance Appraisal Form indicates under "Payout" that he received "1" share with a bonus of "1,557.00". **Doc. 81-1, Ex.1-A.**

objective. Plaintiff was not rated lowest, and employees were afforded the opportunity to provide a self-assessment and sign off on the performance appraisal.

    <u>Plaintiff's 2018 Performance Appraisal (x0232)</u>.

    Defendant has put forward a legitimate, non-discriminatory explanation for the 63.9 "successful" rating Plaintiff received. In accordance with the Pay for Performance Plan, Rodriguez evaluated Plaintiff based on his accomplishments for the fiscal year. Rodriguez used established criteria to rate Plaintiff; the same criteria used to score each employee. Plaintiff's self-assessment and accomplishments were considered as they related to performance plan objectives set at the beginning of the year. However, only fiscal year accomplishments were considered and rated pursuant to the Performance Element Scoring Table. The five critical elements again were: (1) Technical Competence, (2) Cooperation, (3) Communication, (4) Management of Time and Resources, and (5) Customer Relations, this time with a weight assigned to each element of 35, 20, 20, 15 and 10 respectively, totaling 100. Plaintiff received a score of 24.5, 12, 12.4, 9, and 6 for these respective criteria, with a total score of 63.9. **Doc. 81-2, Ex. 2-A** (Performance Appraisal Form). The "Rater Comments" states "Met w[ith] Tom on 17 Jan 19 @0900 hrs in my office. Tom did not agree w[ith] the rating given to him. He did not sign because he said I did not need his signature." *Id*. Based on his score, Plaintiff was eligible to receive one or no shares. Rodriguez attests that a "successful" rating "describes work that is completed and of acceptable quality and delivered without delays." **Doc. 81-2, Ex. 2, ¶ 9 (Rodriguez Declaration)**. Plaintiff was not awarded any shares following the annual pay pool meeting of the division chiefs and supervisors.

    In his Declaration, Cedric Baca attests that he was both Plaintiff's senior rater as well as a pay pool manager. **Doc. 81-3, Ex. 3, ¶ 3.** Baca described the annual pay pool process:

The Division Chief and Branch chiefs come together at the annual pay pool meeting to discuss each of their employees' contributions and accomplishments and to determine share awards for the fiscal year. Each supervisor is given a few minutes on each employee to summarize the information for presentation to the pay pool panel. The meeting allows supervisors in the pay pool meeting to discuss each employee's performance rating, allowing for a fair system with checks and balances.

*Id.*, ¶ **4.**

Baca further attests that he reviews the recommendations for shares and appraisals given by the branch chiefs, and that for plaintiff, he signed off on the appraisal based on the recommendation of Plaintiff's branch chief, Rodriguez. *Id.*, ¶ **6.** The Court finds that the proffered explanation of the appraisal process satisfies Defendant's burden to articulate a facially non-discriminatory explanation for its actions. *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218.

### **Pretext Analysis for All Claims.**

In opposition, Plaintiff argues that, for various reasons, Defendant's explanations for his removal from the UAS program and for his appraisal ratings are pretextual.[27] The Court disagrees.

Plaintiff asserts that he has presented "several pieces of evidence" showing that Defendant's alleged reasons for its actions are inconsistent and unworthy of belief. He points to a series of responses to Defendant's undisputed material facts as evidence of pretext. **Doc. 85 at 30-31.** The Court has already rejected the majority of these "facts" as unsupported by the record or conclusory allegations. With respect to those "facts" not already addressed, such as Plaintiff's assertion that over half his job objectives were changed or cancelled during the 2016-2017 performance appraisal period, the Court notes that in the exhibit cited by Plaintiff, which is untitled

---

[27] The Court addresses this issue as a whole, as Plaintiff refers to his wide-ranging disputes of Defendant's Undisputed Material Facts where he provided additional information or conclusions which he alleges demonstrate discrimination or the unworthiness of Defendant's employees' testimony or reasoning.

and appears to be Plaintiff's response to a series of questions, Plaintiff's personal opinion that he "[does not] feel that the work [h]e had done up to the middle of the year was adequately taken into account during [his] appraisal," (**Doc. 85-8, Ex. 8**) is not relevant to the Court's determination. *Pippin v. Burlington Res. Oil And Gas Co.*, 440 F.3d 1186, 1196–97 (10th Cir. 2006) (…"[I]t is the perception of the decision maker which is relevant, not plaintiff's perception of [him]self."). Moreover, to the extent that Plaintiff disputes whether his appraisal resulting a score of 63.9 was merited, and asserts that he should have received a higher score, the Tenth Circuit has found this sort of conjecture insufficient ground to demonstrate pretext. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988); *see also Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) ("[The Court's] role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.") Inasmuch as Plaintiff asserts that that Goode contradicted herself in various testimony when compared to the testimony of another employee witness, Paige Mergler, who was present at the annual pay pool meeting, having reviewed the relevant exhibits, the Court rejects Plaintiff's arguments as unsupported by the record. ***See supra* fn. 12; Doc. 81 Defendant's UMF ¶ 23; Doc. 85 Plaintiff's Response in Opposition to Defendant's UMF's, ¶ 23(a).**

Plaintiff concludes his argument by asserting, *arguendo*, that even if Defendant has provided legitimate non-discriminatory explanations for its action he has set forth sufficient factual evidence demonstrating the requisite "weakness, implausibilities, inconsistencies…" such that a reasonable factfinder would infer that his employer did not act for those asserted reasons. **Doc. 85 at 32.** *See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) ("In establishing pretext, an employee can show the employer's proffered reason was so inconsistent, implausible, incoherent,

or contradictory that it is unworthy of belief.") (internal citation and quotations omitted).

However, Plaintiff cites solely to *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002), which the Court has already distinguished from this matter in its prior Opinion relating to Plaintiff's non-selection claims.[28] ***See* Doc. 96 at 21-23**. The Court has not discerned the requisite discriminatory animus Plaintiff suggests exists.[29] Moreover, to the extent that Plaintiff disagrees that Baca's signing off on his appraisal review based on the recommendation of Rodriguez was "unreasonable", the Tenth Circuit has repeatedly stated that is insufficient to show pretext. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007) ("[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs."); *Piercy v. Maketa*, 480 F.3d at 1201 ("[The Courts] have recently elaborated on the quantum of evidence that must be shown for a trier of fact in a discrimination claim to reasonably infer that an employer is acting in bad faith to cover up a discriminatory purpose. The fact finder must be able to conclude discrimination was a determinative factor in the employer's actions—simply disbelieving the employer is insufficient.") (internal citation and quotations omitted); *E.E.O.C. v.*

---

28 It is not entirely clear whether Plaintiff intended to include this argument in this Brief, as he concludes with "Plaintiff has established most or all of the factors highlighted in the Garrett case, and therefore summary judgment would be inappropriate on any of his non-selection claims." Plaintiff's non-selection claims are not subject to this Motion. **Doc 85 at 32.**

29 In his Opposition, Plaintiff asserts that "but for his prior protected activity, race/ethnicity, and age, he would have received a higher performance rating, thus resulting in increased monetary compensation, promotion opportunities, and other benefits of employment." **Doc. 85 at 28.** Defendant does not dispute that one of Plaintiff's raters, Rodriguez, was aware of Plaintiff's prior EEO activity. However, Defendant correctly notes that "Plaintiff offers no temporal or other connection between Mr. Rodriguez' knowledge and the 2018 performance evaluation." **Doc. 92 at 10.** Generally, "…[A] plaintiff can establish a causal connection with evidence of 'protected conduct closely followed by adverse action." *Newton v. Wilkie*, 2021 WL 1109194, at *11 (D.N.M. Mar. 23, 2021) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)). However, "unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original).

*Flasher Co., Inc.*, 986 F.2d 1312, 1322 (10th Cir. 1992) ("…[A] mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual.").

## II.     Title VII Retaliation

For similar reasons, Plaintiff's claim for retaliation fails. Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).  To preclude summary judgment Plaintiff must demonstrate under the *McDonnel Douglas* framework that: (1) he engaged in protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Id.* at 1262-63.[30]

Plaintiff asserts unlawful retaliation for his removal from the UAS drone program as well as his 2017 and 2018 performance appraisals. Defendant does not dispute that Plaintiff's EEO filings constitute a protected activity or that one rater, Rodriguez, was aware of Plaintiff's prior EEO activity. In rejecting these claims, the Court's prior analysis with respect to discrimination applies equally here and thus it will not restate it. However, the Court notes that it did not find that the alleged conduct constituted an adverse employment action, and, even if the Court found that there was an adverse employment action, Plaintiff has failed to demonstrate the requisite causal connection between his EEO activity and the allegedly adverse employment actions. *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019) ("To establish the requisite causal connection,

---

[30] To the extent that Plaintiff is also alleging a retaliation claim under the ADEA, the elements of a prima facie case are identical.  *See Nealey v. Water District No. 1 of Johnson County*, 324 Fed. Appx. 744, 750 (10th Cir. 2009).

Plaintiff must show that the decisionmakers took action against him out of a desire to retaliate for his formal discrimination complaints."). The fact that Rodriguez had knowledge of Plaintiff's prior EEO activity is insufficient on its own, to constitute discriminatory animus. *Fulkerson v. Colvin*, 2018 WL 1726245, at *5 (D.N.M. Apr. 6, 2018) (…[M]ere knowledge of prior EEO activity is insufficient to show causation because it does not justify an inference of retaliatory motive"). Simply put, absent substantive evidence, Plaintiff's alleged factual disputes and conjecture do not meet the burden to show retaliation. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir.1997) ("Plaintiff must present other evidence—more than mere speculation, conjecture, or surmise—to establish that [his] protected activity was a but-for cause of the adverse employment action.") (internal quotation omitted).

As detailed in the preceding sections, Plaintiff has given this Court no reason to doubt the veracity of Defendant's legitimate, non-discriminatory reasons for removal of the UAS project and Plaintiff's performance appraisal reviews. Therefore, Defendant is entitled to summary judgment with respect to Plaintiff's retaliation claims.

## III.   Age Discrimination

Plaintiff also asserts claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") with respect to his 2017 and 2018 Performance Appraisals.[31]   The ADEA makes it unlawful for an employer to take an adverse action against an employee because of that employee's age. 29 U.S.C. § 623(a)(1).

The Law Relating to Age Discrimination

---

31 EEO Complaints relating to the 2017 Performance Appraisal - ARARL18JAN00105 (x0105) and the 2018 Performance Appraisal - ARARL19JAN00232 (x0232).

24

"Under the ADEA, plaintiff must prove that age was a determining factor in defendant's treatment of the complaining employee." *E.E.O.C. v. Sperry Corp*., 852 F.2d 503, 507 (10th Cir. 1988) (citing *Perrell v. FinanceAmerica Corp.,* 726 F.2d 654, 656 (10th Cir.1984)). "Plaintiff need not prove that age was the *sole* reason for the employer's acts, but must show that age 'made the difference' in the employer's decision." *Id*. (citing *EEOC v. Prudential Federal Savings & Loan Ass'n,* 763 F.2d 1166, 1170 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) (emphasis in original)). Moreover, "the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.' " *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993)).32

Here, Plaintiff asserts that for his "third applicable EEO claim", the 2017-2018 performance appraisal, he has presented sufficient evidence that "but for his prior protected activity, race/ethnicity, and age" he would have received a higher performance rating which would in turn have resulted in "increased monetary compensation promotion opportunities, and other benefits of employment." **Doc. 85 at 28.** However, Defendant correctly notes that Plaintiff provides nothing in support of his age discrimination claim beyond speculation that management offered more favorable assignments to younger employees. **Doc. 92 at 13.** Inasmuch as Plaintiff addresses the issue of age discrimination in his opposition, Plaintiff's "evidence" consists of: (1)

---

32 The *McDonnell Douglas* burden-shifting framework remains applicable. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011); *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("Although we recognize that *Gross* [*v. FBL Fin. Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)] created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims.").

the fact that these ratings were the lowest he had received in his career, (2) the allegation that the failure to award pay pool shares for his performance impacted his future pay and retirement benefits and, (3) the alleged fact that another white employee over the age of 40 also received "a very low rating" despite "positive comments" in that employee's appraisal. **Doc. 85 at 28.** The Court finds these arguments, absent appropriate citation to substantive evidence in the record, patently insufficient.[33] Accordingly, summary judgment is warranted in that Plaintiff has failed to establish a prima facie case of age discrimination. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case... In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

As the Court concluded in its Order regarding Plaintiff's non-selection claims, Defendant's proffered reasons for Plaintiff's removal from the UAS program and his performance ratings more than satisfy Defendant's burden to articulate a facially non-discriminatory explanation for its actions. *See Stinnett v. Safeway, Inc.*, 337 F.3d at 1218. As the Court stated in its prior decision, despite Plaintiff's assertions to the contrary, nothing suggests that Defendant has a policy of age discrimination. **Doc. 96.**

In sum, Plaintiff has put forward no credible evidence that the decision to remove him from

---

33 To the extent that Plaintiff cites to the rating received by another white, over-40 employee, Dr. Debroux, the Court notes, as it did in its prior Opinion on Plaintiff's non-selection claims, Debroux's own "evidence" is based on conclusory opinions and personal perception of the racial makeup at White Sands. *See* **Doc. 96 at 12-13.**

the UAS program or the "satisfactory" ratings he received from his supervisors/raters at White Sands were motived by discrimination or retaliation and has not demonstrated that Defendant's legitimate, non-discriminatory reasons for its conduct were pretextual. Because Plaintiff has not met his burden to show that any of Defendant's explanations are suspect, Defendant is entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Defendant is entitled to summary judgment on Plaintiff's race discrimination and retaliation claims under Title VII as well as his age discrimination claims under the ADEA.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 81**) is **GRANTED.** All claims are dismissed. A separate Judgment will be issued accordingly.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**